# Case No. 9,119.

## MARSH v. SAYLES et al.

[5 Fish. Pat. Cas. 610; 3 Biss. 321; 2 O. G. 340; 4 Chi. Leg. News, 461; 7 Am. Law Rev. 355.] [1]

Circuit Court, N. D. Illinois. Sept., 1872.

PATENTS—DELAY IN RENEWING APPLICATION—ABANDONMENT—REJECTION—PRESUMPTION.

1. Where an inventor, whose application was rejected and withdrawn in 1851, delayed to renew it until 1869, and meanwhile—viz., 1859—a patent on substantially the same improvement was granted to another, the existence of which patent became known to the first inventor in 1865: Held, that the legal inference from these facts is that he acquiesced in the action of the patent office, and abandoned whatever claim he had to the public.

[Cited in United States Rifle, etc., Co. v. Whitney Arms Co., Case No. 16,793. Distinguished in Colgate v. Western Union Tel. Co., Id. 2,995.]

2. It is not material whether the rejection of his claim was right or wrong. Even if wrong, he was obliged, if he insisted on his claim, to take some action on the subject within a reasonable time, either by an appeal from the commissioner or by a bill in equity in the proper court.

3. The simple allegation in a bill in equity, under section 52 of the patent act, that the inventor did not abandon his claim to the public, is not

[1] [Reported by Samuel S. Fisher, Esq., and by Josiah H. Bissell, Esq., and here compiled and reprinted by permission.]

enough to rebut the presumption to the contrary arising from the above state of facts.

4. The first inventor ought to have a patent for his invention, if he seeks to obtain it within a reasonable time and by the methods the law points out.

5. The proviso of section 35 of the act of 1870 [16 Stat. 202], which provides for the renewal of rejected and withdrawn applications, is subject to the implied condition that the applicant has not lost his right to make the application by abandonment or surrender of the same.

6. This proviso was not intended to restore what had been voluntarily given to the public, or what had become the property of the public by the neglect or refusal for a series of years to prosecute what was originally a valid claim.

Demurrer to bill in equity. Suit brought by complainant, Hiram H. Marsh, to obtain a patent upon an "improvement in cultivators," by proceedings under section 52 of the patent act of 1870, which reads as follows: "That whenever a patent on application is refused, for any reason whatever, either by the commissioner or by the supreme court of the District of Columbia, upon appeal from the commissioner, the applicant may have remedy by bill in equity; and the court having cognizance thereof, on notice to adverse parties, and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the commissioner to issue such patent, on the applicant filing in the patent office a copy of the adjudication, and otherwise complying with the requisitions of law. And in all cases where there is no opposing party, a copy of the bill shall be served on the commissioner, and all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not." In addition to Thomas Sayles and the other parties interested in what was alleged to be a conflicting patent, granted to James Dundas Feb. 8, 1859 [No. 22,859], and reissued Oct. 16, 1866 [No. 2,380], a copy of the bill was served upon the commissioner of patents, who thereupon filed a demurrer to the bill. The case came up for argument upon the demurrer, which was based upon several distinct points, the most prominent among which were, first, that the facts, as set forth in the bill, showed that the plaintiff had abandoned the invention; and therefore was not entitled to the relief sought; second, that inasmuch as Marsh's proceedings before the patent office were, in contemplation of law, ex parte, he had a right, under section 48 of the act of July 8, 1870, to appeal from the adverse decision of the commissioner to the supreme court of the District of Columbia, sitting in Banc, and that he was bound to exhaust his remedy in that direction before proceeding by a bill in equity, as provided in section 52, this latter section, it was urged, being de-

signed to furnish a remedy immediately upon a refusal by the commissioner to grant a patent only in those cases—e. g., in interferences—in which his action is made final. Only one of the various grounds of demurrer was considered by the court in its opinion.

Goodwin, Larned & Towle, for complainant.

Fisher & Duncan, for commissioner of patents.

Before DRUMMOND, Circuit Judge, and BLODGETT, District Judge.

DRUMMOND, Circuit Judge. This is a bill filed under section 52 of the revised patent law of July 8, 1870, which authorizes a bill to be filed in equity when a patent has been refused. A demurrer has been put into the bill by the commissioner of patents; and, so far as it is necessary to state the facts of the case, they here follow:

In July, 1851, Marsh, the plaintiff, made application for a patent for an "improvement in cultivators." The same month his claim for a patent was rejected by the office. In November, 1851, he made application for, and there was refunded to him, twenty dollars of the duty fee which he had paid previously.

In August, 1851, James Dundas applied for a patent for substantially the same improvement. In December, 1852, this application was rejected by the patent office. This rejection, some years after, was reconsidered, and in February, 1859, a patent was granted to Dundas.

In October, 1866, Dundas obtained a reissue; and very soon after, Thomas Sayles, one of these defendants, as assignee of the Dundas patent, filed a bill in this court against one Hapgood and others, to restrain them from infringing the letters patent of Dundas. In October, 1869, this court decided the Dundas patent invalid, because Marsh was the prior inventor. The case is reported [Case No. 12,420].

Marsh did not know of the application and issuing of the patent to Dundas till 1865. He waited for the determination of the suit of Sayles v. Hapgood [supra], and in December, 1869, renewed his application, and in November, 1870, his claim was rejected. Decisions of Commissioner of Patents, 1870, p. 151.

In addition to these facts set forth in the bill, it alleges that Marsh never abandoned his invention to the public. There is no explanation whatever given, than as above, of the long delay, except that he supposed the decision of the commissioner in 1851 was conclusive, and that he was wholly uninformed of his rights. And he insists the patent office is estopped from setting up, in bar of his renewed application, the wrongful rejection of his claim and the issuing of a patent to another.

Various objections are taken in the demurrer to the bill, but we will consider only one, viz., that the bill does not make such a case as to entitle the plaintiff to the relief he seeks. And it seems to us that the legal result from the facts stated in the bill is, notwithstanding his denial to the contrary, that he did acquiesce in the action of the patent office in 1851, and therefore did abandon whatever claim he might have to the public; and, according to the view we take, it is not material whether the rejection of his claim was right or wrong. Concede that it was wrongful: If he insisted on his claim he was obliged, within a reasonable time, to take some action on the subject, either by an appeal from the commissioner or by a bill in equity in the proper court.

In this case he made no motion for more than eighteen years after the rejection of his claim, during all which time his invention remained in the patent office with such description as he had chosen to give. We think the simple allegation that he did not abandon his claim to the public is not enough to rebut the presumption arising from this state of facts. It is not necessary to decide whether any satisfactory explanation could be given of so long a delay. It is not furnished in this bill.

It is plain that, in consequence of the decision in the case of Sayles v. Hapgood [supra], an attempt was afterwards made to recall an abandoned claim. To sustain this bill would be to vitalize many an old forgotten claim that now lies buried under the rubbish of the patent office. We think it no answer to say that for his invention Marsh ought to have had a patent; because the meaning of that is, he ought to have had it, if he, within a reasonable time, and by the methods the law points out, sought to obtain it.

Section 35 of the patent law of 1870, declares "that any person who has an interest in an invention where a patent was ordered to issue, on the payment of the final fee, and who has failed to make payment within six months from the time when it was allowed, * * * shall have a right to make an application for a patent the same as in an original application: "Provided, that the second application be made within two years after the allowance of the original application;" * * * "And provided further, that when an application for a patent has been rejected or withdrawn prior to the passage of this act, the applicant shall have six months from the date of such passage to renew his application, or to file a new one; and, if he omit to do either, his application shall be held to have been abandoned."

It is argued that the plaintiff is within the terms of this section, and that the second proviso applies literally to the facts of this case. It is true that the application of the plaintiff for a patent was rejected prior to the passage of the act, and it is insisted that the sequence to this is that the applicant has six months from the date of its passage to

renew his application. This is in fact the letter of the proviso, and yet it must be true that it is subject to the implied condition that the applicant has not lost his right to make the application, by abandonment or surrender of the same. It could not have been intended to restore what had already been voluntarily given to the public, or what had become the property of the public by the neglect or refusal for a series of years to prosecute what was originally a valid claim. Here the neglect or refusal had continued for more than eighteen years, and we can not think that the proviso in section 35 was intended to include so stale a claim as this. It may be admitted that, as stated in the last clause of section 35, abandonment is a question of fact, and we hold, notwithstanding the denial and pretexts to the contrary stated, that Marsh did in fact abandon his claim to the public; that such is the necessary conclusion from the allegations contained in the bill.

The demurrer will, therefore, be sustained.

[For another case involving this patent, see Sayles v. Hapgood, Case No. 12,420.]